Upon review of all the competent evidence of record with reference to the errors assigned, and finding no good ground to reconsider the evidence, receive further evidence, or to rehear the parties or their representatives, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner with minor modifications as follows:
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner, and following, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 17 December 1989 an employment relationship existed between plaintiff-employee and defendant-employer.
3. Electric Mutual Liability Insurance Company is the carrier on risk.
4. On 17 December 1989 plaintiff sustained a compensable injury arising out of and in the course of his employment with defendant-employer.
5. A packet of plaintiff's medical records, Exhibit #1, were stipulated into evidence on 24 October 1997. These include plaintiff's records from:
A. General Electric Medical Department;
B. Dr. John J. Fishman;
C. Dr. Phillip A. Van Campen;
D. Dr. John Parkinson; and
E. The military.
6. The Industrial Commission Forms 19, 33 and 33R, Exhibit #2, were stipulated into evidence.
7. Plaintiff's medical reports from February 1974 and January 1980, Exhibit #3, were stipulated into evidence.
8. Four (4) additional pages of plaintiff's medical records from 1990 from General Electric Medical Department file were stipulated into evidence.
***********
Based upon the competent evidence of record herein, the Full Commission adopts the Findings of Fact of the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On 17 December 1989 plaintiff was a 40-year old male employed by defendant-employer as a machine operator. Plaintiff had been employed in that capacity since 1975. At the time of hearing before the Deputy Commissioner plaintiff still worked for defendant-employer.
2. On 17 December 1989 plaintiff sustained a compensable injury to his head when he received a laceration on the right side of his head, just above the ear.
3. Approximately three (3) weeks later on 9 January 1990 plaintiff complained at defendant-employer's medical department that his head was sore on the right side at the parietal area, or above the right ear. On 11 January 1990, Dr. Theodore Swirat, the plant physician, diagnosed plaintiff with a contused skull.
4. Following Dr. Swirat's diagnosis, plaintiff underwent additional extensive diagnostic testing. Plaintiff did not sustain a damaged nerve in his scalp or any other neurologic injury due to plaintiff's compensable bump on 17 December 1989.
5. From 22 June 1990 through 27 July 1990 Dr. John J. Fishman administered multiple myofascial injections into plaintiff's scalp, resulting in a complete relief of plaintiff's symptoms.
6. Plaintiff was involved in a non-work related vehicular accident on 27 March 1992. After the accident, plaintiff was transferred via ambulance to New Hanover Memorial for head pain. Plaintiff came under the care of Dr. Phillip A. Van Campen and informed him that his previous headaches from his compensable injury of 17 December 1989 had completely resolved for six (6) months, only to be activated by the non-work related car accident on 27 March 1992. Plaintiff complained to Dr. Van Campen of pain on the back of his head radiating down his neck.
7. After receiving a monetary settlement for injuries received in the 27 March 1992 car accident, plaintiff sought treatment from Dr. Donald J. Solomon, a neurologist, on 1 October 1993 complaining of headaches and head pain radiating down his neck. Plaintiff did not inform Dr. Solomon of the March, 1992 car accident or that his headaches had resolved for six (6) months prior to that accident.
8. Since 27 March 1992, plaintiff has sought treatment from numerous doctors including Drs. Solomon, Van Campen, Fishman, Margit E. Royal, Barrie J. Hurwitz and David S. Bachman. Plaintiff did not request authorization from defendant-carrier for the multiple repeat diagnostic tests and treatment he has undergone since March, 1992. The bills plaintiff incurred for the testing and treating of headaches and depression have been appropriately paid by either his group health carrier or by the Veterans' Administration.
9. Plaintiff suffered from headaches and depression prior to his December, 1989 compensable injury. From 1967 to 1974 plaintiff served as a Marine in Vietnam. While there, plaintiff sustained an injury to his head when the truck he was riding in exploded. Plaintiff also maintains that he was exposed to Agent Orange.
10. Plaintiff's Veterans' Administration records are full of plaintiff's complaints of headaches and depression both prior to and after his December, 1989 compensable injury. Even as early as 1984 plaintiff had strong, obsessive themes concerning health. Plaintiff's medical records contain the following statements: Plaintiff's "overwhelming preoccupation with sickness in all bodily areas is suggestive of a somatiform disorder-hypochondriasis." Plaintiff "is sincere in his conviction that he is a `sick man'." "The basis for these feelings, however, appear psychological in origin."
11. Following defendant-carrier's denial of plaintiff's medical bills for headache and depression as not causally related to his compensable injury, plaintiff shifted the focus of the cause of all his problems away from Vietnam and laid blame on his employer and the workers' compensation system/Industrial Commission.
12. Plaintiff underwent an independent medical evaluation with Dr. C. Thomas Gualtieri, a neuropsychologist in Chapel Hill, who also diagnosed plaintiff with a paranoid disorder (delusional disorder or a schizo-title disorder). Dr. Gualtieri did not find any specific objective abnormality which would causally link plaintiff's continuing problems with the 1989 compensable bump on the head. Dr. Gualtieri recommended plaintiff undergo further psychotherapy.
13. The greater weight of the medical evidence is that plaintiff's medical bills incurred since March, 1992 are related to plaintiff's problems pre-existing plaintiff's 1989 compensable injury; and complaints throughout his medical records are consistent before the 1989 injury and after.
14. In his contentions plaintiff requested money for days missed as well as a monetary settlement for injury and depression. Plaintiff missed less than seven (7) days which are causally related to plaintiff's compensable injury. Any further days plaintiff missed, such as the sixty to ninety (60-90) days for in-hospital treatment for depression are not causally related to plaintiff's compensable bump on his head. The greater weight of the evidence is that any hospitalization plaintiff incurred for depression is more likely related to his post-traumatic stress disorder, personal problems at home (house burned down with no insurance) and marital problems. The medical treatment plaintiff received from Drs. Fishman, Hurwitz and Bachman were paid by defendant-carrier. Plaintiff is also not entitled to any type of $40,000.00 cash award settlement by virtue of this hearing.
15. Plaintiff has received no disability rating to his head as a result of his December 1989 compensable injury.
16. Plaintiff has not lost any wages as a result of his compensable injury. After plaintiff's 17 December 1989 compensable injury, plaintiff earned the same or greater wages at defendant-employer than he had earned prior to December, 1989. At the time of hearing, plaintiff still worked for defendant-employer and had for thirty-three (33) years.
***********
Based on the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The greater weight of the evidence is that plaintiff's medical expenses incurred since March, 1992 for headaches and depression are not causally related to plaintiff's 17 December 1989 compensable injury; nor were those expenses reasonable and necessary to effect a cure, give relief, or lessen plaintiff's period of disability attributable to any complaints or conditions caused by the 17 December 1989 compensable injury. N.C. Gen. Stat. § 97-25.
2. Plaintiff is entitled to have defendants provide all medical treatment arising from plaintiff's compensable injury on 17 December 1989 to the extent it tends to effect a cure, give relief or lessen plaintiff's disability. Plaintiff is not entitled to unauthorized, unapproved medical expenses. N.C. Gen. Stat. § 97-25; Hyler v. GTE Products Company, 333 N.C. 258,425 S.E.2d 698 (1993).
3. Plaintiff is not entitled to any temporary total disability, temporary partial disability, permanent partial or total disability as a result of his 17 December 1989 compensable injury. N.C. Gen. Stat. § 97-29; N.C. Gen. Stat. § 97-30; N.C. Gen. Stat. § 97-31.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim in this case must be, and the same is, DENIED.
2. Each side shall bear its own costs.
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ LAURA K. MAVRETIC COMMISSIONER
jcb